```
IN THE UNITED STATES DISTRICT COURT
   FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

OLIVIA GREENE LIVENGOOD,        )
                                )
              Plaintiff,        )
                                )
         v.                     )       1:17CV504
                                )
NANCY A. BERRYHILL,             )
Acting Commissioner of Social   )
Security,                       )
                                )
              Defendant.        )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Olivia Greene Livengood, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 1.) Defendant has filed the certified administrative record (Docket Entry 6 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 9, 13; see also Docket Entry 10 (Plaintiff's Memorandum); Docket Entry 14 (Defendant's Memorandum)). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI. (Tr. 170-85.) Upon denial of those applications initially (Tr. 73-80, 96-99) and on reconsideration (Tr. 82-94, 106-08), Plaintiff requested a hearing

de novo before an Administrative Law Judge ("ALJ") (Tr. 105). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 44-72.) On the day before the hearing, Plaintiff amended the disability onset date for her DIB claim from July 15, 2011, to February 3, 2013, the date she last received unemployment compensation. (Tr. 196, 246, 252.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 23-39.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 7-11), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the [] Act through December 31, 2016.

2. [Plaintiff] has not engaged in substantial gainful activity since February 3, 2013, the alleged onset date, as amended.

. . .

3. [Plaintiff] has the following severe impairments: degenerative disc disease; psoriatic arthritis and degenerative joint disease; fibromyalgia and chronic pain syndrome; polycystic ovarian syndrome; diverticulitis; depression; and anxiety.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

> 5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . except: she is restricted to a sit/stand option with ability to change position twice per hour. She cannot climb ladders, ropes or scaffolds, and can only occasionally climb ramps and stairs. [Plaintiff] is limited to frequent, not constant, handling and fingering. She is limited to simple, routine, repetitive tasks, and low stress work, defined as having no complex decision-making, no crisis situations, and no constant changes in routine. [Plaintiff] can stay on task for 2 hours at a time.
>
> . . .
>
> 6. [Plaintiff] is unable to perform any past relevant work.
>
> . . .
>
> 10. Considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [she] can perform.
>
> . . .
>
> 11. [Plaintiff] has not been under a disability, as defined in the [] Act, from February 3, 2013, through the date of this decision.

(Tr. 25-39 (bold font and internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).

Plaintiff has not established entitlement to relief under the extremely limited review standard.

## A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (brackets and internal quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence

4

allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's]

---

[1] The Act "comprises two disability benefits programs. [DIB] provides benefits to disabled persons who have contributed to the program while employed. [SSI] provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

medical condition." Id. "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." Id.

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. See id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process,
(continued...)

## B. Assignment of Error

In Plaintiff's sole assignment of error, she asserts that "[t]he conclusion that [Plaintiff] is capable of 'light' work, even with additional restrictions, is not based upon substantial evidence. Specifically, it was error not to give controlling weight to the opinions supporting [Plaintiff's] disability from Dr. Jerome Watson, a board certified specialist in Rheumatology and Internal Medicine, whose office has a long treatment relationship with [Plaintiff] as well as descriptive office notes to support the conclusions of his RFC report." (Docket Entry 10 at 2 (bold font and internal citations omitted).) In support of her main argument, Plaintiff points to three particular errors that the ALJ allegedly committed in discounting Dr. Watson's opinion:

> A. It was error to cite [Plaintiff's] normal distress levels, normal gait, balance and motor functioning as reasons to discredit Dr. Watson's assessment of [Plaintiff's] functioning.
>
> . . .
>
> B. It was error to cite [Plaintiff's] adoption of her niece's baby and her decision to home school her eight year old daughter to support the conclusion that [Plaintiff] could engage in substantial gainful activity.
>
> . . .
>
> C. Finally, it was error to cite [Plaintiff's] termination of her employment as a reason to discount Dr. Watson's conclusions because her amended onset date of February 3, 2013

---

[4] (...continued)
review does not proceed to the next step.").

is almost two (2) years after her job with Bassett Mirror Company ended.

(Id. at 6-10 (bold font omitted).) These contentions lack merit.

As a general rule, an ALJ must give controlling weight to the opinion of a treating source regarding the nature and severity of a claimant's impairment. See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("[T]reating sources . . . provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). The treating source rule also recognizes, however, that not all treating sources or treating source opinions merit the same deference. The nature and extent of each treatment relationship appreciably tempers the weight an ALJ affords an opinion. See 20 C.F.R. §§ 404.1527(c)(2)(ii), 416.927(c)(2)(ii). Moreover, as subsections (2) through (4) of the rule describe in great detail, a treating source's opinion, like all medical opinions, deserves deference only if well-supported by medical signs and laboratory findings and consistent with the other substantial evidence in the case record. See 20 C.F.R. §§ 404.1527(c)(2)-(4), 416.927(c)(2)-(4). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be

9

accorded significantly less weight." Craig, 76 F.3d at 590 (emphasis added).

The ALJ evaluated Dr. Watson's opinions as follows:

> On February 22, 2016, Jerome Watson, M.D., one of [Plaintiff's] treating physicians at Carolina Specialty Care, opined that she can walk one block without rest or severe pain, sit for 20 minutes at one time, and stand 20 minutes at one time. He stated that [Plaintiff] needs a job that will permit shifting positions at will from sitting, standing or walking. Dr. Watson found that [Plaintiff] will sometimes need unscheduled breaks during an 8-hour workday. He also concluded that [Plaintiff] can frequently lift less than 10 pounds, and occasionally lift up to 20 pounds; she cannot reach bilaterally; and she can stoop and crouch only 5% of the workday. According to Dr. Watson, [Plaintiff] is likely to be absent from work more than 4 times per month.
>
> From the outset, the [ALJ] notes that a number of Dr. Watson's findings are not inconsistent with the [RFC] above. For example, he stated that [Plaintiff] is capable of low stress jobs. He also found that she does not need a cane, and can occasionally lift up to 20 pounds. To this extent, his opinion is given some weight. However, question 15c, regarding [Plaintiff's] ability to sit, stand and walk in an 8-hour workday is formatted in a confusing manner, and its meaning is not entirely clear to the [ALJ]. To the extent Dr. Watson's opinion does impose disabling limitations, such as the restrictions on bilateral reaching, and the absences of more than four days per month, it is inconsistent with the evidence of record and is given no weight to that extent. For example, despite occasionally abnormal signs regarding [Plaintiff's] shoulders, multiple physical examinations showed that she had normal ranges of motion in her shoulders and elbows including in January 2014, as well as April, July, August and September 2015. These signs are hardly consistent with the conclusion that she cannot reach. Furthermore, this conclusion is inconsistent with the fact that [Plaintiff] is adopting an infant, which is a great responsibility that would inherently require significant reaching abilities. The absence of limitations is also inconsistent with this adoption process, especially when considered in light of the fact that [Plaintiff] already homeschools her

10

> 8-year-old daughter. Such childcare is akin to a full-time job in itself.

(Tr. 36-37 (internal citations omitted).) As discussed in more detail below, the ALJ did not err with respect to his evaluation and weighing of Dr. Watson's opinions.

Plaintiff first argues that the ALJ should not have discounted Dr. Watson's opinions based on Plaintiff's "normal distress levels, normal gait, balance and motor functioning." (Docket Entry 10 at 6.) Plaintiff "submit[s] that when [Dr. Watson] says [Plaintiff] is not in acute distress, it is more descriptive of a chronic level of pain she must live with and adapt to but does not put her in the hospital. This kind of pain[] is disabling . . . . '[Plaintiff] has daily joint and muscle aches described at (sic) moderate to severe.'" (Id. (quoting Tr. 622).) However, as the above-quoted analysis makes clear, the ALJ did not rely on Plaintiff's "normal distress levels, normal gait, balance and motor functioning" (id.) to discount Dr. Watson's opinions (see Tr. 36-37). Moreover, to the extent the ALJ relied on such normal findings to more generally support the RFC determination, Plaintiff has not shown error with respect to the ALJ's consideration of such normal findings as inconsistent with Plaintiff's allegations that she suffers from extreme back, leg, and foot pain, significant limitations on her ability to stand and walk, and frequent falls (see Tr. 51-52, 56, 58, 59, 61-62, 63). (See Docket Entry 10.)

11

Plaintiff next contends that the ALJ erred in finding that her childcare responsibilities "support[ed] the conclusion that she could engage in substantial gainful activity." (Docket Entry 10 at 7 (bold font omitted).) More specifically, Plaintiff asserts that, although she did recently adopt a three-month-old child, she did so because the child's mother (Plaintiff's niece) would have otherwise abandoned the child, and, moreover, that Plaintiff receives substantial assistance from family members in caring for her children in any event. (See Docket Entry 10 at 9.)

As shown by the ALJ's evaluation quoted above, the ALJ found Dr. Watson's opinion that Plaintiff could not reach in any direction at all "inconsistent with the fact that [Plaintiff] [wa]s adopting an infant," which the ALJ deemed "a great responsibility that would inherently require significant reaching abilities." (Tr. 37.) Neither Plaintiff's laudable motive for adopting the infant nor the fact that she had assistance from family members in caring for the baby renders improper the ALJ's straightforward observation that caring for a three-month-old infant, even with assistance, conflicted with Dr. Watson's opinion that Plaintiff could not reach at all with either of her upper extremities.

Furthermore, to the extent Plaintiff challenges the propriety of the ALJ's consideration of Plaintiff's status as a caregiver of two children in his overall evaluation of the consistency of Plaintiff's statements, Plaintiff has not shown error. A

12

claimant's ability to care for others clearly constitutes a permissible area of inquiry and consideration for an ALJ in terms of the consistency of a claimant's statements with the record. The Social Security Administration's Function Report - Adult forms ("Function Reports") requested Plaintiff to state whether she takes care of anyone else and, if so, what kinds of activities she can still perform for others. (See Tr. 213.) In response, Plaintiff indicated that she helped to bathe and dress her child (id.; see also Tr. 212 (reflecting Plaintiff's statement that she wakes her daughter up and helps her get ready for school)). Moreover, Plaintiff does not explain how the ALJ erred in evaluating Plaintiff's ability to homeschool her eight-year-old daughter. (See Docket Entry 10 at 8-9.) The capacity to regularly care for two young children, including by homeschooling one, undercuts Plaintiff's contention of disabling pain. Instead, such evidence tends to show that, despite Plaintiff's impairments, she retained the mental and physical functional ability to perform a limited range of simple, light work.

Finally, Plaintiff argues that the ALJ erred in using the fact that she "'left her last job not because of her symptoms and limitations but because the plant where she was working closed down'" as a factor weighing against a finding of disability. (Docket Entry 10 at 10 (quoting Tr. 33).) Plaintiff contends that

13

she left that job in 2011, two years before her amended onset date of February 3, 2013. (See id.) This argument misses the mark.

As an initial matter, the ALJ did not rely on Plaintiff's reason for leaving her last job to discount Dr. Watson's opinions. (See Tr. 36-37.) Moreover, to the extent Plaintiff disputes the ALJ's ability to consider that information more generally in his determination of the consistency of Plaintiff's statements, Plaintiff's contention falls short. On her Disability Report, Plaintiff indicated that she stopped working on July 15, 2011, "[b]ecause of [her] conditions." (Tr. 196 (emphasis added).) Thus, Plaintiff's testimony that she left her last job because the plant closed (see Tr. 50-51) directly conflicts with her prior statements on the Disability Report that her conditions caused her to leave the job (see Tr. 196). Moreover, although Plaintiff later amended her onset date to February 3, 2013, she acknowledged that she did so because she collected unemployment compensation until February 3, 2013. (See Tr. 246, 252.)

### III. CONCLUSION

Plaintiff has not established an error warranting relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Summary Judgment (Docket Entry 9) be denied, that Defendant's

Motion for Judgment on the Pleadings (Docket Entry 13) be granted, and that this action be dismissed with prejudice.

                                    /s/ L. Patrick Auld
                                  **L. Patrick Auld**
                          **United States Magistrate Judge**

August 22, 2018